**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00494-PAB-NYW

JDK LLC, a Colorado limited liability company,
DEBORAH KOLASSA,
JERRY KOLASSA, and
S. MARK SPOONE,

       Plaintiffs,

v.

PAUL A. TALBOT,
MAX 1 FINANCIAL LLC, a Colorado limited liability company, and
BROOKE TALBOT,

       Defendants.

---

**ORDER**

---

Magistrate Judge Nina Y. Wang

       This civil action is before the court on Defendants' Joint Motion to Join GPSI as a Necessary Party filed by Defendants Frank Hofmeister ("Mr. Hofmeister"),[1] Paul Talbot ("Mr. Talbot"), and Brooke Talbot ("Ms. Talbot") ("Motion to Join GPSI") [#75, filed Aug. 14, 2015]. The Motion to Join GPSI was referred to the undersigned Magistrate Judge for disposition

---

[1] On March 21, 2016, Plaintiffs and Mr. Hofmeister filed a Notice of Voluntary Dismissal with Prejudice as to Mr. Hofmeister. [#120]. Accordingly, while this Motion was brought by Mr. Hofmeister and the Talbots, the Talbots and Max 1 Financial remain as the only defendants in this action.

pursuant to D.C.COLO.LCivR 72.3 [#86],[2] and the Order of Reference dated November 2, 2015 [#89].[3] The court has reviewed the Motion to Join GPSI, to which no response was filed, and discussed the motion during a Status Conference with the Parties on November 13, 2015 [#97]. Based on the Parties'[4] representations about their attempts to resolve the underlying dispute, *see* [#100, #109], this court reserved ruling on the present motion pending multiple attempts by the Parties to administratively close the case. *See* [#110, #111, #113]. On March 10, 2016, Plaintiffs JDK LLC, Deborah Kolassa, Jerry Kolassa, and S. Mark Spoone filed a Motion to Strike/Withdraw Amended Consent Motion for Administrative Closure. [#115]. The presiding judge, the Honorable Philip A. Brimmer, granted the Motion to Strike/Withdraw Amended Consent Motion for Administrative Closure on March 14, 2016. [#117]. The instant Motion to Join GPSI is now ripe for determination. For the reasons set forth herein, this court DENIES the Motion to Join GPSI.

## BACKGROUND

The following allegations are drawn from the original and Amended Complaint in this action, and are taken as true for the purposes of this instant Motion to Join GPSI. This case arises from relationships between Plaintiffs and Defendants involving a business plan to fund and place kiosks in jails and municipal locations to facilitate electronic payments of items such

---

[2] Where the court refers to the filings made in Electronic Court Filing ("ECF") system in this action, it uses the convention [#__] and then refers to the page number as assigned by the ECF system.

[3] Pursuant to D.C.COLO.LCivR 72.3(b), "[t]he parties may consent to the final determination of a dispositive motion by the assigned magistrate judge by filing a notice of consent. The district judge may enter an order approving the notice."

[4] Originally, this case was also initiated against three additional defendants as well, Ronald K. Hodge, Gregg K. Hodge, and James Sylvester. [#1]. These three defendants were dismissed from the lawsuit pursuant to a Notice of Voluntary Dismissal dated December 18, 2015. [#108].

as licenses, parking tickets, municipal bills, child support, real estate and school taxes, and court fines and fees. [#1 at ¶ 15; #80 at ¶ 14]. Plaintiffs allege that Mr. Hofmeister was the founder and President of General Payments Systems, Inc., a Colorado corporation doing business as EZ Card & Kiosk ("GPSI-Colorado") and a second Nevada corporation with the same name ("GPSI-Nevada") (collectively, "GPSI"). [#80 at ¶ 10]. Plaintiffs aver that Paul Talbot acted as a managing partner or sales agent on behalf GPSI, as well as President of a company called Municipal Holdings Solutions Corporation, a Colorado corporation doing business under the name of EZ Pay Corporate ("EZ Pay Corporate"). [*Id.* at ¶ 9]. Plaintiffs allege that Defendant Brooke Talbot was a sales employee of EZ Pay Corporate, and the President of Max 1 Financial, which is identified as a Colorado limited liability corporation. [*Id.* at ¶¶ 12-13].

On or about July 12, 2011, Plaintiff JDK LLC ("JDK") entered a written license agreement with GPSI-Colorado that extended an exclusive license to JDK to develop, market, distribute, sell, lease, or otherwise transfer the payment processing services and technology to municipal court systems, probation departments, and police departments within Pennsylvania, using the GPSI brand, trademarks and logos. [#80 at ¶ 18]. In exchange for these rights, JDK paid GPSI an initial license fee in the amount of $640,000, with an additional $710,000 in license fees that would become due contingent upon achievement of various gross revenue thresholds. [*Id.* at ¶ 19]. The initial $640,000 payment was distributed between Mr. Hofmeister, Mr. Talbot, and former Defendants Ronald Hodge, Gregg Hodge, and James Sylvester. [*Id.* at ¶ 21]. JDK then invested an additional $360,000 that it believed was being directed to the purchase of kiosks, labor and other equipment, which was again directed to Mr. Hofmeister, Mr. Talbot, and former Defendants Ronald Hodge, Gregg Hodge, and James Sylvester. JDK also

wired payments to GPSI totaling over $500,000 over the course of July through September 2011. [*Id.* at ¶ 24]. All of these payments were purportedly made based on representations that the investments would require little active management on the part of JDK. [*Id.* at ¶ 27]. In 2013, Plaintiffs Jerry and Deborah Kolassa formed a company with Mr. Talbot, JDP, LLC, for purpose of entering a similar exclusive license with GPSI[5] for the jail side of the business in Pennsylvania, and paid $310,000 for those rights. [*Id.* at ¶¶ 97-100].

On or about June 2011, GPSI-Colorado entered an exclusive license agreement with a now-defunct company, C&T Holding, for the exclusive license to develop, market, distribute, sell, lease, or otherwise transfer the payment processing services and technology to municipal court systems, probation departments, and police departments within Ohio, using the GPSI brand, trademarks and logos. [*Id.* at ¶ 50]. C&T Holding was owned by Mr. Talbot and a third-party and close friend of Mr. Talbot's, Daniel Cook ("Mr. Cook"). In or around September 2012, Plaintiff Spoone entered an agreement with Mr. Talbot and Mr. Cook to purchase 50% of C&T's license for $540,000. Mr. Spoone paid $225,000 of that fee. [*Id.* at ¶ 147]. After entering the agreement, Mr. Spoone learned that C&T only had rights to the municipal side of the business, and no rights to the jail side. [*Id.* at ¶ 76]. Mr. Spoone also learned that the license required ongoing royalties to GPSI, and also learned of other performance requirements that were allegedly not previously explained to him. [*Id.*].

After Plaintiffs made these significant investments, they learned that the GPSI investment opportunities were significantly different in reality than they were represented. In addition, JDK

---

[5] In the Amended Complaint, Plaintiffs refer to CPSI when discussing JDP. *See* [#80 at ¶¶ 97-100]. This court presumes that these are simply typographical errors, because the Amended Complaint does not separately define an entity named "CPSI."

alleges that without consent or authorization, Defendant Max 1 Financial, described as Ms. Talbot's "credit card company," entered into merchant agreements and then covertly deducted excess fees and charges from JDK's bank account. [*Id.* at ¶¶ 89-90]. As a result, Plaintiffs have asserted a number of claims against the remaining Defendants, including: (1) civil RICO against all Defendants; (2) breach of fiduciary duty against Mr. Talbot; (3) fraud in the inducement against Defendants Hofmeister, Mr. Talbot, and Max 1 Financial (4) fraud against Defendants Hofmeister and Mr. Talbot; (5) fraud against the Talbots and Max 1 Financial; (6) violation of the Colorado Consumer Protection Act against Defendants Hofmeister, the Talbots, and Max 1 Financial; (7) civil theft and conversion against Defendants Hofmeister and Mr. Talbot; (8) constructive trust against Defendants Hofmeister, the Talbots, and Max 1 Financial; and (9) accounting against the Talbots and Max 1 Financial. [#80]. Plaintiffs also sought rescission of the various contracts; damages in the amount of $1.3 million then trebled; attorney's fees and costs; disgorgement of profits; and order imposing an immediate constructive trust and accounting. [*Id.* at 40].

Plaintiffs have not named GPSI-Colorado or GPSI (comprised of both GPSI-Colorado and GPSI-Nevada) as a defendant or defendants in this action. Instead, JDK filed an arbitration action against GPSI and Daniel Cook before the Judicial Arbiter Group ("JAG"). [#71-1]. In the arbitration, Plaintiffs alleged very similar causes of action to those that are presented herein: breach of contract and breach of the covenant of good faith and fair dealing against GPSI; breach of contract by Mr. Spoone against Mr. Cook; civil RICO against GPSI and Mr. Cook; fraudulent inducement against GPSI and Mr. Cook; fraud against GPSI and Mr. Cook; violation of the Colorado Consumer Protection Act against GPSI and Mr. Cook; civil theft/conversion against

5

GPSI and Mr. Cook; constructive trust; and accounting against GPSI. [*Id.*]. The relief sought through the arbitration was substantially similar to what was pled in the Amended Complaint, although in arbitration, Plaintiffs sought $1.6 million trebled in damages, rather than $1.3 million. [#71-1 at 21]. Defendants Hofmeister and the Talbots argue that GPSI should be joined as a necessary party under Rule 19 to this action because GPSI has agreed to indemnify them; that the two parallel actions may lead to inconsistent results; and because it is inefficient for these Defendants to have to seek indemnification by GPSI through another action, should Plaintiffs prevail against them. [#75]. Because Mr. Hofmeister has been dismissed from this case, the court directs the following analysis to the consideration only of how joinder of GPSI would affect the remaining claims and Parties in the case. Plaintiffs did not file a response to the Motion to Join GPSI.

## ANALYSIS

**I.      Applicable Law**

Rule 19(a) of the Federal Rules of Civil Procedure provides:

*Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The first consideration under Rule 19(a) is whether, in absence of GPSI, complete relief could be accorded among the individuals and entities who are already parties to this action. *See Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1258 (10th Cir. 2001). The second consideration is whether disposition of the action without the participation of GPSI would impair, as a practical matter, the Talbots' ability to protect their interests or subject the Talbots to inconsistent outcomes. *Id.* A party that is necessary under Rule 19(a) who can be joined should be joined. *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1288 (10th Cir. 2003).

## II.   Is GPSI a Necessary Party

The Talbots contend that GPSI is a necessary party because it has agreed to indemnify them, and (1) not joining GPSI will subject the Talbots to inconsistent obligations and (2) not joining GPSI will prevent the court from providing the Talbots with complete relief in this litigation. [#75]. This court respectfully disagrees.

As an initial matter, there is no evidence in the record before the court that the Talbots have any type of indemnity agreement with GPSI. [#75 at 2]. While the indemnification agreement between Mr. Hofmeister and GPSI is attached as an exhibit to the Motion for Joinder of GPSI, that agreement arose out of a prior Settlement Agreement and Mutual Release to which the Talbots are not a party. [#75-2 at 2]. In addition, even assuming that GPSI extended the same indemnity to the Talbots, the agreement specifically excludes indemnity or reimbursement for "any expense or payments incurred in connection with any claim or liability established to have arisen out of his own willful misconduct or gross negligence." [*Id.*]. A number of the claims asserted against the Talbots (or Max 1 Financial) involve allegations of willful misconduct. For instance, Plaintiffs allege that the Talbots, separately or collectively, committed

7

fraud in claims 3, 4, and 5. [#80]. There are also claims against the Talbots and Max 1 Financial arising from the alleged misconduct by charging excessive credit card processing fees perpetrated by the Talbots through Max 1 Financial that Plaintiffs do not seek to recover from GPSI through the arbitration. [*Id.* at ¶¶ 141-145; #71-1 at 11-12]. Therefore, any argument that GPSI must be joined due to an indemnification obligation owed to the Talbots is respectfully rejected.

Even assuming an indemnity obligation flowing from GPSI to the Talbots, such obligation does not change the analysis. Any indemnity between GPSI and the Talbots is not relevant to whether Plaintiffs can recover from the Talbots and Max 1 in this action, as arguably the Talbots and Max 1 Financial may be liable to Plaintiffs even if GPSI is not. *See Arrington v. Michigan-Wisconsin Pipeline Co.*, 637 F.2d 867, 871 (10th Cir. 1980) (holding that an indemnity obligation was insufficient make the indemnitor a necessary party). The argument that the court in this case could rule that "Defendants are liable to Plaintiffs because GPSI breached its agreements and because of Defendants' role in that breach" is unpersuasive. There are no breach of contract claims brought against the individual Defendants in this case; rather, the claims brought against the Talbots in this case sound in tort.

In addition, the fact that GPSI may refuse to indemnify Defendants under a separate contractual obligation is distinct from the claims presented by this action, and does not make GPSI necessary under Rule 19(a). Indeed, any indemnity obligation flowing from GPSI to the Talbots is not triggered unless and until there is a finding of liability against the Talbots. The fact that the Talbots may need to bring a separate contractual action seeking indemnity from GPSI based on an unrelated agreement does not prevent the court from providing complete relief

with respect to *the causes of action as pled in this action*. And as discussed above, it is unclear that GPSI could be liable under a theory of *respondeat superior* for any fraud perpetuated by the Talbots, or Max 1 Financial. [#75 at 4]. Defendants fail to cite any authority to support their argument, and this court declines to extend its analysis beyond the arguments as set forth by the Defendants, particularly given that Defendants are represented by counsel. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself"); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants). Accordingly, this court concludes that GPSI is not a necessary party to this action.

## CONCLUSION

For the reasons set forth herein, Defendants' Joint Motion to Join GPSI as a Necessary Party [#75] is **DENIED**.

DATED: March 22, 2016                    BY THE COURT:

                                         s/Nina Y. Wang_____
                                         United States Magistrate Judge

9